UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLD HILL PARTNERS INC., as Agent and Security Trustee, | |
| Plaintiff, | No.  20 Cv. 10749 |
| - against - | (ADMIRALTY – Fed. R. Civ. P. 9(h)) |
| BRAVERY MARITIME CORPORATION, | **VERIFIED COMPLAINT** |
| Defendant. | |

Plaintiff Old Hill Partners Inc., as agent and security trustee ("Old Hill Partners"), by its attorneys, Seward & Kissel LLP, for its verified complaint against Defendant Bravery Maritime Corporation, as borrower ("Bravery Maritime"), alleges as follows:

## NATURE OF THE ACTION

1. This action arises from Defendant's breaches of a loan agreement dated as of June 16, 2020 (as amended, the "Loan Agreement") made in connection with the financing of the purchase of the very large crude carrier vessel M/V OMAN PRIDE, IMO Number 9153525 (the "Vessel").

2. Despite a series of three amendments seeking to address Bravery Maritime's failures to comply with the Loan Agreement and related Finance Documents in accordance with their terms, Bravery Maritime remains in continuing noncompliance of its obligations under the Loan Agreement and related Finance Documents.

3. Specifically, and among other defaults, Bravery Maritime has failed and refused to repay the amounts due and owing under the Loan Agreement, causing a Borrower nonpayment Event of Default, and Bravery Maritime has failed and refused to comply with the

post-closing requirements set forth in Sections 5(a)-(d) of Amendment No. 3 to the Loan Agreement.

4. Accordingly, on December 20, 2020, pursuant to Section 20.2(a)(ii) of the Loan Agreement, Old Hill Partners served a notice of default on Bravery Maritime and its parent guarantor NIMR International, LLC ("NIMR International") and the Loan was accelerated, such that all accrued interest and all other amounts accrued or owing under the Loan Agreement and the other Finance Documents are immediately due and payable.

5. By this action Old Hill Partners, on behalf of and as agent for the Lenders, seeks recovery of the amounts owed to the Lenders together with all accrued interest and all other amounts accrued or owing under the Loan Agreement and the other Finance Documents, which amounts are now immediately due and payable.

## PARTIES

6. Plaintiff Old Hill Partners is a corporation organized under the laws of Delaware with its principal place of business in Connecticut.

7. Defendant Bravery Maritime is a corporation formed and existing under the laws of the Republic of Liberia with its principal place of business in Oman. Bravery Maritime is wholly-owned by NIMR International, a limited liability company formed under the laws of the Sultanate of Oman with its principal place of business in Oman. The owners of the membership interests of NIMR International, as stated in the Finance Documents, are Mahmood Rashid Amur Al Habsi ("Mr. Al Habsi") and Nasser Rashid Saif Al Rajhi ("Mr. Al Rajhi"), citizens of Oman.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that the controversy is between citizens of a state and citizens or subjects of a foreign state and

the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Federal subject matter jurisdiction also arises under this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because, under Section 32.2(a) of the Loan Agreement, Bravery Maritime irrevocably and unconditionally submitted to the jurisdiction and venue of this Court as to any action or proceeding arising out of or relating to the Loan Agreement.

## THE LOAN AGREEMENT

10. The Loan Agreement was made as of June 16, 2020 by and among Bravery Maritime, as Borrower, NIMR International, as Parent Guarantor, OHP II LP, Howe Acres, LLC and OHP Ltd., as lenders (the "Lenders"), and Old Hill Partners, as Agent and Security Trustee for the Lenders.[1] A copy of the Loan Agreement is attached hereto as Exhibit 1.

11. Subject to the provisions of the Loan Agreement, the Lenders agreed to make available to Bravery Maritime a loan facility up to the lesser of $16,575,000 and 65% of the Fair Market Value of the Vessel for the purpose of partially financing the acquisition of the Vessel. *See* Ex. 1 at 1.

12. On June 17, 2020 (the "Drawdown Date"), Bravery Maritime drew down upon the loan in the total principal amount of $16,575,000. A copy of the Drawdown Notice entered at the closing of the loan is attached hereto as Exhibit 2.

---

[1] Capitalized terms used but not defined herein have the meanings specified in the Loan Agreement.

*Borrower Repayment Obligations: The Repayment Date*

13. Section 8.1 of the Loan Agreement provides that "The Borrower shall repay the Advance[2] by twelve (12) quarterly consecutive installments of $750,000 on each Repayment Date and the remaining principal amount of the Advance shall be paid on the Maturity Date."

14. Section 8.2(a) of the Loan Agreement provides in relevant part that "The first repayment installment shall be repaid on the date falling three (3) months after the Drawdown Date. . ." Accordingly, the Borrower's first $750,000 repayment was due on or about September 17, 2020, the first Repayment Date.

15. Bravery Maritime did not repay the amounts due under the Loan on or before the scheduled Repayment Date of September 17, 2020.

*Amendment No. 1 to the Loan Agreement*

16. On September 16, 2020, the parties agreed to Amendment No. 1 to Loan Agreement ("Amendment No. 1"), a copy of which is attached hereto as Exhibit 3, reciting that NIMR International was not in compliance with its obligation under Section 4(a)(v) of the Parent Guaranty to maintain at all times a minimum balance of Cash and Cash Equivalents equal to $16,750,000; and that as Initial Charterer, it was in default under the Initial Charter due to nonpayment of Charter hire – each of which are Events of Default under the Loan Agreement.

17. The parties likewise acknowledged in Amendment No. 1 that the Parent Guarantor's nonpayment of Charter hire would cause a Borrower nonpayment Event of Default under the Loan Agreement unless the first Repayment Date was postponed.

---

[2] Under the Loan Agreement, the "Advance" means the principal amount of the borrowing by the Borrower under the Loan Agreement. Ex. 1 at 2.

4

18.     Accordingly, under Section 2(c) of Amendment No. 1, the parties agreed in relevant part that the first Repayment Date "shall be October 1, 2020."

19.     Amendment No. 1 was signed and delivered by Bravery Maritime but was declared ineffective by Old Hill Partners owing to Bravery Maritime's failure to timely pay the required amendment fee. Old Hill Partners accordingly circulated revised Amendment No. 1 to Loan Agreement dated September 25, 2020 ("Revised Amendment No. 1"), a copy of which is attached hereto as Exhibit 4.

20.     Bravery Maritime agreed to Revised Amendment No. 1, with payment of the amendment fee for Revised Amendment No. 1 received by Old Hill Partners on or about September 28, 2020.

21.     As in Amendment No. 1, Revised Amendment No. 1 recited that NIMR International was not in compliance with its obligation under Section 4(a)(v) of the Parent Guaranty to maintain at all times a minimum balance of Cash and Cash Equivalents equal to $16,750,000; and that as Initial Charterer, it was in default under the Initial Charter due to nonpayment of Charter hire – each of which are Events of Default under the Loan Agreement.

22.     The parties likewise acknowledged in Revised Amendment No. 1 that the Parent Guarantor's nonpayment of Charter hire would cause a Borrower nonpayment Event of Default under the Loan Agreement unless the first Repayment Date was postponed.

23.     Accordingly, under Section 2(c) of Revised Amendment No. 1, the parties agreed in relevant part that the first Repayment Date "shall be October 1, 2020."

24.     Bravery Maritime failed and refused to repay the amounts due under the Loan on or before the postponed Repayment Date of October 1, 2020.

*Amendment No. 2 to the Loan Agreement*

25. On October 8, 2020, the parties agreed to Amendment No. 2 to Loan Agreement ("Amendment No. 2"), attached hereto as Exhibit 5, reciting that NIMR International remained in noncompliance with its obligation under Section 4(a)(v) of the Parent Guaranty to maintain at all times a minimum balance of Cash and Cash Equivalents equal to $16,750,000; and that as Initial Charterer, it was in default under the Initial Charter due to nonpayment of Charter hire – each of which are Events of Default under the Loan Agreement.

26. Amendment No. 2 acknowledges that the parties agreed to the Revised Amendment No. 1 attached as Exhibit 4 and "dated as of September 25, 2020."[3]

27. The parties acknowledged in Amendment No. 2 that the Parent Guarantor's nonpayment of Charter hire had caused a Borrower nonpayment Event of Default under the Loan Agreement, that the Borrower had failed to comply with certain of the conditions set forth in Amendment No. 1 and had failed to make the October 1, 2020 payment as contemplated in Amendment No. 1.  As recited in Amendment No. 2, the Borrower requested that the first Repayment Date be further postponed.

28. Accordingly, under Section 2(b) of Amendment No. 2, the parties agreed in relevant part that the first Repayment Date should be the earlier of certain specified events, the latest being not later than "thirty (30) calendar days from the date hereof," or November 7, 2020.

29. Bravery Maritime failed and refused to repay the amounts due under the Loan on or before the further-postponed Repayment Date of November 7, 2020.

---

[3] Revised Amendment No. 1 was agreed but not signed by Borrower due to, on information and belief, a COVID-19 infection that affected Borrower's ability to physically sign that document.

*Amendment No. 3 to the Loan Agreement*

30. On November 10, 2020, the parties agreed to Amendment No. 3 to Loan Agreement ("Amendment No. 3") attached hereto as Exhibit 6, reciting that NIMR International was not in compliance with its obligation under Section 4(a)(v) of the Parent Guaranty to maintain at all times a minimum balance of Cash and Cash Equivalents equal to $16,750,000; and that as Initial Charterer, it was in default under the Initial Charter due to nonpayment of Charter hire – each of which are Events of Default under the Loan Agreement.

31. The parties acknowledged in Amendment No. 3 that the Parent Guarantor's nonpayment of Charter hire had caused a Borrower nonpayment Event of Default under the Loan Agreement and that the Borrower had failed to comply with certain of the conditions set forth in Amendment No. 1 and Amendment No. 2. As recited in Amendment No. 3, the Borrower requested that the first Repayment Date be further postponed.

32. Accordingly, under Section 2(b) of Amendment No. 3, the parties agreed in relevant part that the first Repayment Date should be the earlier of certain specified events, the latest being not later than "twenty (20) calendar days from the date hereof," or November 30, 2020.

33. Bravery Maritime failed and refused to repay the amounts due under the Loan on or before the further-postponed Repayment Date of November 30, 2020.

*Additional Events of Default – Amendment No. 3 Post-Closing Requirements*

34. Section 5 of Amendment No. 3 provides in relevant part that:

> 5. <u>Post-Closing Requirements</u>. It is a requirement under this Amendment that the Security Parties comply with the following obligations (the "**Post-Closing Requirements**") within the specified time periods:
>
> (a) On the first Repayment Date (as amended hereby), the Borrower shall pay a loan monitoring fee of

$83,750 to the Agent, which amount shall be transferred by the Agent from the Collection Account.

(b) Within fifteen (15) calendar days of the effectiveness of this Amendment No. 3 the Borrower and the Security Trustee shall duly execute and deliver an amendment to the Mortgage over the Ship reflecting entry in to the Amendment No. 1, Amendment No. 2 and this Amendment No. 3, and the Agent shall receive satisfactory evidence that such amendment has been duly recorded under the laws of the Republic of Liberia.

(c) Within fifteen (15) Business Days of the effectiveness of this Amendment No. 3 the Borrower shall confirm that the Vessel Operating Account at Abu Dhabi Islamic Bank is open, has not been used for any purpose other than the operating expenses of the Ship, and that the Agent has been granted read-only access.

(d) Within fifteen (15) Business Days of the effectiveness of this Amendment No. 3 the Security Parties shall provide a full accounting of the operating expenses of the Ship for the period from the Drawdown Date through the date on which such accounting is delivered, which accounting shall be in form and substance acceptable to the Agent.

*   *   *

Noncompliance with any of the Post-Closing Requirements within the specified time periods shall, without further notice, constitute an Event of Default under the Loan Agreement.

Ex. 5 at 4.

35. Bravery Maritime failed and refused to comply with the Post-Closing Requirements set forth in Sections 5(a) – 5(d) of Amendment No. 3.

*Events of Default and Notice of Default*

36. Bravery Maritime remains in continuing noncompliance with its obligations under the Loan Agreement and related Finance Documents, and has failed and refused to comply with terms and conditions of Amendment No. 1, Amendment No. 2, or Amendment No. 3.

37. In particular, pursuant to Section 20.1(a) of the Loan Agreement, it is an Event of Default "if the Borrower or any other Security Party fails to pay when due any sum payable under a Finance Document or under any document relating to a Finance Document."

38. Pursuant to Section 2(b) of Amendment No. 3, the latest date for the amended first Repayment Date was November 30, 2020.

39. Pursuant to Section 5 of Amendment No. 3, it is an Event of Default if the Security Parties fail to comply with any of the Post-Closing Requirements set out in Sections 5(a), 5(b), 5(c), and 5(d) of Amendment No. 3 within the permitted time periods.

40. Bravery Maritime has failed to make the required payment due on the first Repayment Date.

41. Bravery Maritime has failed to comply with the Post-Closing Requirements within the permitted time periods.

42. Accordingly, on December 20, 2020, Old Hill Partners served a Written Notice of Events of Default (the "Default Notice") on Bravery Maritime and NIMR International, and the Loan was accelerated. The Default Notice is attached hereto as Exhibit 7.

43. Under the Default Notice, Old Hill Partners formally notified Bravery Maritime and NIMR International of the Events of Default, and declared the Loan together with all accrued interest and all other amounts accrued or owing under the Loan Agreement and the other Finance Documents to be immediately due and payable. In that connection, all of the Promissory Notes of the Lenders, attached hereto as Exhibit 8, are likewise immediately due and payable.

## FIRST CLAIM FOR RELIEF
### (Breaches of Loan Agreement and Finance Documents)

44. Old Hill Partners repeats and realleges the allegations set forth in paragraphs 1 through 43 above as if fully set forth herein.

45. Old Hill Partners, as Agent and Security Trustee on behalf of the Lenders, entered into a valid and binding Loan Agreement with Bravery Maritime under New York law.

46. Old Hill Partners performed its obligations under the Loan Agreement, including effecting the loan to Bravery Maritime of $16,575,000.00 in principal amount on or about June 17, 2020, the Drawdown Date.

47. In breach of the Loan Agreement, Bravery Maritime has failed and refused to pay amounts owed under the Loan Agreement, and has failed to comply with provisions of the Loan Agreement and the Finance Documents, including at least: (i) the failure to repay any portion of the Loan on the first Repayment Date; and (ii) the failures to comply with the Post-Closing Requirements of Amendment No. 3.

48. As a result of Bravery Maritime's breaches of the Loan Agreement, Old Hill Partners has been damaged thereby and seeks recovery of the Loan in the principal amount of $16,575,000.00 together with all accrued interest and all other amounts accrued or owing under the Loan Agreement and the other Finance Documents, including all expenses and legal fees incurred by the Security Trustee in connection with this action pursuant to Section 21.3(d) of the Loan Agreement, which are immediately due and payable.

## RELIEF REQUESTED

**WHEREFORE,** Old Hill Partners, as Agent on behalf of the Lenders, requests the entry of judgment in its favor upon the Loan Agreement and Promissory Notes awarding:

(a) damages in the amount of $16,575,000.00 upon the principal amount of the Loan;

(b) interest at the rate of 12.0% per annum between the Drawdown Date and the first Repayment Date, as set forth in Section 5.1 of the Loan Agreement;

(c) default interest at the rate of 18.0% per annum on overdue amounts from (and including) the first Repayment Date through the date of judgment, as set forth in Section 7.2 of the Loan Agreement;

(d) post-judgment interest at the applicable statutory rate;

(e) the costs and disbursements of this action, including reasonable attorneys' fees in connection with enforcing the Loan Agreement and Promissory Notes; and

(f) for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       December 21, 2020

                                        SEWARD & KISSEL LLP

                                        By: *s/ Bruce G. Paulsen*
                                                  Bruce G. Paulsen
                                                  Brian P. Maloney
                                        One Battery Park Plaza
                                        New York, New York 10004
                                        Tel: (212) 574-1200
                                        Fax: (212) 480-8421
                                        paulsen@sewkis.com
                                        maloney@sewkis.com

                                        *Attorneys for Plaintiff Old Hill Partners Inc.*

## VERIFICATION

STATE OF CONNECTICUT

COUNTY OF FAIRFIELD

Personally before me, the undersigned authority, came and appeared John C. Howe, who being by me first duly sworn, did depose and say:

> I, John C. Howe, being duly sworn, depose and state that I am the President of Old Hill Partners Inc. and am authorized to make this verification on behalf of Plaintiff Old Hill Partners Inc. I have read the foregoing Verified Complaint and know the contents thereof. The allegations contained and documents attached to the Verified Complaint are true and correct to the best of my personal knowledge, information and belief.

_____

Sworn to and subscribed before me this the 21st day of December, 2020

_____
Notary Public

Yolanda Gjuraj
Notary Public
State of Connecticut
My Commission Expires:
May 31, 20 22